**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**NEKITA KELLEY and**                                                              **PLAINTIFFS**
**KAYDEN JACKSON**

**V.**                                                                    **NO. 3:25-CV-346-DMB-RP**

**TARGET CORPORATION**                                                          **DEFENDANT**

**<u>OPINION AND ORDER</u>**

Nekita Kelley and Kayden Jackson sued Target Corporation alleging race discrimination, harassment, retaliation, and wrongful termination in violation of Title VII.  Target moves to dismiss all their claims, arguing improper service of process, failure to state a claim, and failure to provide it notice of the claims.  Because Target was not properly served, because the allegations in the complaint are insufficient to state claims for harassment and wrongful termination, and because Jackson failed to exhaust administrative remedies as to her retaliation claim, all claims against Target will be dismissed.

**I
<u>Procedural History</u>**

On December 2, 2025, Nekita Kelley and Kayden Jackson filed a pro se complaint against Target Corporation in the United States District Court for the Northern District of Mississippi, alleging that throughout their employment at Target Store #1169 at 7255 Interstate Boulevard in Horn Lake, Mississippi, they were subjected to race discrimination, harassment, retaliation, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, as amended.[1]  Doc. #1.  Two days later, United States Magistrate Judge Roy Percy granted their motions to proceed

---

[1] They "seek $10,000,000 total in damages ($5,000,000 each)," "[b]ack pay and front pay," "punitive damages," and "[a]ny additional relief the Court finds fair and proper, including injunctive relief."  Doc. #1 at PageID 6, 7.

in forma pauperis ("IFP").  Doc. #5.  On December 29, a United States Marshal served the summons and complaint on "Angela Bell, Services Engagement Team Lead" at "7255 Interstate Blvd[,] Horn Lake, MS 38637."  Doc. #7.

Kelley and Jackson moved for an entry of default against Target on January 23, 2026.  Doc. #8.  The same day, Target moved for an extension to respond to the complaint.  Doc. #9.

On February 2, Target filed a motion to dismiss based on improper service of process and failure to state a claim pursuant to, respectively, Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6).  Doc. #10.  On February 10, Judge Percy denied Kelley and Jackson's motion for entry of default because they "fail[ed] to demonstrate that the defendant corporation has been properly served with process" since they did not "demonstrate by affidavit or otherwise that service upon [Angela Bell] constitutes proper service of process on Target Corporation."  Doc. #12 at 1.  In a separate order the same day, Judge Percy granted Target's extension motion and deemed Target's February 2 motion to dismiss timely.  Doc. #13.  The plaintiffs responded in opposition to the motion to dismiss on February 19,[2] Doc. #14; and Target replied on February 26, Doc. #15.

## II
## Standards

### A.  Rule 12(b)(5)

Federal Rule of Civil Procedure 12(b)(5) authorizes the filing of a motion to dismiss for insufficient service of process.  "Unless service is waived, proof of service must be made to the court."  FED. R. CIV. P. 4(l)(1).  "[O]nce the validity of service of process has been contested, the

---

[2] The plaintiffs' response is untimely by two days because it was due to be filed no later than February 17. *See* L.U. Civ. R. 7(b)(4) (setting fourteen-day period to file response to motion); FED. R. CIV. P. 6(a)(1)(C) (if deadline falls on legal holiday, "the period continues to run until the end of the next day").  Kelley's representation in the certificate of service that she served the response on Target's counsel of record on February 15, Doc. #14 at PageID 61, does not render the response timely.  Also, the plaintiffs violated Local Rules 7(b)(2) and 7(b)(4) because they filed only a memorandum with exhibits attached.  However, in the interest of considering the issues raised in the motion to dismiss on their merits, and because Target did not object to the untimeliness of the response or the failure to file a separate response and memorandum, the Court will consider the response.

plaintiff bears the burden of establishing its validity." *Henderson v. Republic of Tex. Biker Rally, Inc.*, 672 F. App'x 383, 384 (5th Cir. 2016) (per curiam) (quoting *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)).

### B. Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) asserts a "failure to state a claim upon which relief can be granted." To survive dismissal under the Rule 12(b)(6) standard, "a complaint must present enough facts to state a plausible claim to relief. … A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). However, the Court "do[es] not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *In re Great Lakes*, 624 F.3d at 210). In reviewing a Rule 12(b)(6) motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. U.S. Customs & Border Patrol*, 975 F.3d 488, 496 (5th Cir. 2020) (per curiam) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### III
### Factual Allegations

Nekita Kelley and Kayden Jackson, who are both Black, were employees at Target Store #1169 in Horn Lake, Mississippi. Doc. #1 at PageID 6. Beginning in October 2024, after they

3

complained to Target HR and corporate about discriminatory treatment, management cut their work hours, reducing Kelley's weekly hours from thirty to fifteen, and reducing Jackson's weekly hours from thirty to six. *Id*.

Management enforced a rule only against Black employees in the backroom, including Kelley and Jackson, not allowing them to take breaks or lunch together. *Id*. White employees on the sales floor were allowed to take breaks together with no consequences. *Id*. And White employee Jill, who is not a manager, was allowed to clock in unscheduled and received full-time hours. *Id*. Black employees, including Kelley and Jackson, were told they could not come in unless scheduled. *Id*. Kelley and Jackson continued to report this treatment. *Id*. Kelley was terminated in July 2025 after being accused of a chair markdown incident that followed normal store procedures and was approved by a leader.[3] *Id*.

**IV**
**Analysis**

Target submits that Kelley and Jackson's claims should be dismissed because they "failed to properly serve [it] with a summons and copy of the Complaint," their "shotgun pleading fails to provide [it] (and the Court) with notice of the claims against it and the grounds upon which each claim rests," and they "fail to state any claim upon which relief may be granted." Doc. #10 at 1.

Kelley and Jackson respond that they "exhausted administrative remedies," "service of process was proper," and "[a]ccepting [their] factual allegations as true and drawing reasonable inferences in their favor, [they] have plausibly alleged race discrimination and retaliation." Doc. #14 at PageID 59–60 (emphases omitted).

---

[3] It is unclear from the complaint whether Jackson's employment continued after Kelley was terminated and, if so, whether she is still employed with Target. Jackson's August 25, 2025, EEOC charge attached to the complaint does not mention termination. Doc. #1-3 at PageID 13–14.

4

Target replies that "Plaintiffs' harassment and 'wrongful termination' claims … should be dismissed with prejudice" because "[their] Response fails to address [those claims];" "[n]either Plaintiff asserted any facts in support of a claim of harassment before the EEOC, nor did Plaintiff Jackson assert any facts in her EEOC Charge alleging retaliation;" they "assert[] only conclusory statements, failing to provide specific facts to back up those conclusions" as to their race discrimination and retaliation claims; and "[they] fail to address the fact that they failed to serve [its] registered agent or any individual authorized to accept service of the Complaint."  Doc. #15 at 1.

### A. Service of Process

Target argues that "Plaintiffs have failed to serve [it] in accordance with Rule 4" of the Federal Rules of Civil Procedure, because "instead of serving the summons on [its registered agent] CT Corporation System, the summons was sent directly to [its] Horn Lake, Mississippi store and a team lead, who is neither a corporate officer nor a registered agent authorized to receive service of process, received service."  Doc. #11 at 3.

The plaintiffs respond that "[s]ervice was executed in accordance with Rule 4 of the Federal Rules of Civil Procedure," and "[a]ny alleged defect does not warrant dismissal where Defendant has appeared and suffered no prejudice."  Doc. #14 at PageID 59.

Target replies that "it is Plaintiffs' burden to demonstrate the validity of service," and their argument that "service was valid because the Summons was delivered by the United States Marshal Service … utterly fails to address the fact that the individual who was served, a team lead, is not authorized by [it] to accept service."  Doc. #15 at 6–7.

Rule 4(h) instructs that a corporation must be served "in the manner prescribed by Rule 4(e)(1)," or "by delivering a copy of the summons and of the complaint to an officer, a managing

5

or general agent, or any other agent authorized by appointment or by law to receive service of process." FED. R. CIV. P. 4(h)(1)(A)-(B). Rule 4(e)(1) provides for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Under Mississippi law, a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." MISS. R. CIV. P. 4(d)(4).

Because Target challenges the validity of service, it is Kelly and Jackson's burden to establish service was proper. They have not done so because they have not established that the Services Engagement Team Lead of the Horn Lake Target store, Angela Bell, is an officer, a managing or general agent, or an agent authorized by appointment or law to receive service.

Pro se litigants like Kelley and Jackson are required to comply with rules of procedure. *Bowling v. Roach*, 816 F. App'x 901, 903 (5th Cir. 2020). However, "[a] plaintiff proceeding IFP is 'entitled to rely upon service by the U.S. Marshals and should not be penalized for failure of the Marshal's Service to properly effect service of process, where such failure is through no fault of the litigant.'" *Ellibee v. Leonard*, 226 F. App'x 351, 358 (5th Cir. 2007) (per curiam) (quoting *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987)). But "once such a plaintiff is aware of possible defects in service of process, he must attempt to remedy them." *Id*.

Here, Kelley and Jackson provided the address of the Horn Lake Target store in their complaint—7255 Interstate Blvd, Horn Lake, DeSoto, Mississippi 38637. Doc. #1 at PageID 2. The Marshals Service served the summons and complaint on the team lead at the same address specified in the complaint. Doc. #7. And since the motion to dismiss was filed nearly six months ago, it does not appear that Kelley and Jackson have made any effort to provide the Marshals

6

Service with the correct address for service, nor have they requested an extension to perfect service. So, the complaint is properly dismissed for improper service pursuant to Rule 12(b)(5). *See Rochon*, 828 F.2d at 1110 (dismissal for improper service upheld when pro se plaintiff proceeding IFP failed to request Marshals Service serve proper defendant after becoming aware of unsuccessful service); *Holly v. Metro. Transit Auth.*, 213 F. App'x 343, 344–45 (5th Cir. 2007) (per curiam) (dismissal proper when pro se plaintiff proceeding IFP did not attempt to correct service in response to defendant's motion to dismiss for improper service).

As to Kelley and Jackson's argument that dismissal is improper because Target had actual notice of their claims, although actual notice, along with the plaintiffs' pro se status and the fact that they attempted to effect service, may weigh in favor of granting an extension of time to perfect service, *Sys. Signs Supplies v. U.S. Dep't of Just.*, 903 F.2d 1011, 1014 (5th Cir. 1990) (per curiam), Kelly and Jackson did not request an extension to serve Target.

### B. Failure to State Claim

Though the Court need not address the remainder of Target's arguments for dismissal since Kelley and Jackson's failure to properly serve Target alone necessitates dismissal of the complaint, the Court analyzes each failure-to-state-a-claim argument in turn.

### 1. Race discrimination

Target submits that "Plaintiffs only generally and conclusory aver that they were treated disparately because of their race" "[b]ut they fail to assert details to establish any proper comparators and claim unnamed 'managers' instituted a rule against unnamed 'Black employees' regarding breaks and lunches, without providing necessary information to establish that these employees are similarly situated in all relevant respects." Doc. #11 at 8.

7

The plaintiffs counter that they alleged in their complaint that "[t]hey are Black female employees," "[t]hey were subjected to selective enforcement of policies," "[t]hey experienced heightened scrutiny and micromanagement," "[t]heir work hours were reduced," "Kelley was terminated," and "[n]on-Black employees were not subjected to similar scrutiny or scheduling reductions." Doc. #14 at PageID 56–57. They also point out that "[a]t the pleading stage, [they] are not required to identify specific comparators." *Id.* at PageID 57 (citing *Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Target replies that "Plaintiffs do no more than allege that they are members of a protected class and they suffered adverse employment actions" but fail to allege "that the same decision-maker treated individuals outside of their protected class similarly situated in all relevant respects to Plaintiffs more favorably," or that "any white employees who held the same positions as Plaintiffs, committed the same workplace violations as Plaintiffs, received the same prior warnings as Plaintiffs, or had the same availability for scheduling as Plaintiffs, were treated more favorably than Plaintiffs." Doc. #15 at 5.

"Title VII forbids employers from discriminating against an employee 'with respect to her compensation, terms, conditions, or privileges of employment, because of her race.'" *Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 648 (5th Cir. 2025) (quoting 42 U.S.C. § 2000e-2(a)(1)). "Where, as here, a plaintiff relies on circumstantial evidence to prove her Title VII discrimination case, the *McDonnell Douglas* burden-shifting framework applies." *Id.* at 648–49. "Under that framework, [the plaintiff] must first make a prima facie case of race discrimination, and then the burden of production shifts to [the defendant] to proffer a legitimate, nondiscriminatory reason for [its] action." *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021) (citing *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)).

> To establish a prima facie case of race discrimination, a plaintiff must show that she:
>
> (1) belongs to a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group.

*Shahrashoob*, 125 F.4th at 649 (citing *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021)). However, "[i]n an employment discrimination case, the complaint need not 'contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*.'" *Norsworthy v. Hou. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023) (quoting *Swierkiewicz*, 534 U.S. at 508). "The prima facie case under *McDonnell Douglas* … is an evidentiary standard, not a pleading requirement." *Id*. (quoting *Swierkiewicz*, 534 U.S. at 510). But in framing a motion to dismiss inquiry, "a district court may find it helpful to reference *McDonnell Douglas*." *Id*.

"[A]lthough plaintiffs do not 'have to submit evidence to establish a prima facie case of discrimination at this stage, they must plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make their case plausible.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Aus.*, 836 F.3d 467, 470 (5th Cir. 2016)). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'" *Id*. at 767 (emphasis omitted) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

"To plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the terms, conditions, or privileges of his or her employment." *Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 430 (5th Cir. 2023) (per curiam) (internal quotation marks and emphasis omitted) (quoting *Hamilton v. Dall. Cnty.*, 79

9

F.4th 494, 502–03 (5th Cir. 2023)). "[T]he phrase 'terms, conditions, or privileges' should be broadly construed." *Id*. A Title VII plaintiff is required to allege "some 'disadvantageous' change in an employment term or condition," *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998)), but "does not have to show … that the harm incurred was 'significant,'" *id*. at 355 (quoting *Muldrow v. City of St. Louis*, 30 F.4th 680, 688 (8th Cir. 2022), *vacated*, 601 U.S. 346 (2024)).

Here, both Kelley and Jackson allege that rules were enforced against them and other Black employees but not against white employees, specifically a rule prohibiting Black employees from taking breaks or lunch together and a rule about not coming to work unless scheduled; and they identify at least one specific comparator, a white employee named Jill. The facts alleged in the complaint are sufficient to plausibly show discrimination in the terms, conditions, or privileges of their employment because of their race. And it is not necessary at this stage for the plaintiffs to show that other employees treated differently were similarly situated in all respects. *See Cicalese*, 924 F.3d at 768 (district court erred by applying "a heightened pleading standard" when it "scrutiniz[ed] whether [the plaintiffs'] fellow employees were really 'similarly situated'" at motion to dismiss stage). Kelley and Jackson's race discrimination claims will not be dismissed for failure to state a claim.

### 2. Harassment

Target argues that Kelley and Jackson "allege *no facts* whatsoever in support of any race-based harassment or racially hostile work environment" because they "make no assertions of any unwelcomed harassment based on their race, nor do they allege any harassment affected their employment in any manner;" and they "failed to assert race-based harassment or hostile work environment in their Charges of Discrimination filed with the EEOC." Doc. #11 at 8–9.

10

The plaintiffs respond that "[t]he exhaustion requirement has been satisfied" because their "EEOC narratives describe discriminatory treatment, retaliation, and adverse employment actions." Doc. #14 at PageID 59. Otherwise, the plaintiffs do not otherwise address Target's argument that they failed to state a claim for harassment.

Target replies that "Plaintiffs' Response fails to address the fatal issues with their harassment … claims;" "Plaintiffs have failed to allege any facts which could feasibly support a claim of harassment" because they "assert no facts to establish that they were subjected to severe or pervasive harassment because of their race;" and "although Plaintiffs generally aver in their Response that a claim not raised in an EEOC charge may be asserted if it flows from the same set of facts investigated by the EEOC, they alleged no such facts in their EEOC charges." Doc. #15 at 2–3.

### a. Sufficiency of Allegations

The Court construes the plaintiffs' harassment claim as a Title VII hostile work environment claim. *See Blanchard v. Tulane Univ.*, 636 F. Supp. 3d 642, 650 n.51 (E.D. La. 2022) (construing harassment allegations as hostile work environment claim because "allegations of workplace harassment are included in a claim of hostile work environment under Title VII") (quoting *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 740 n.19 (E.D. La. 2019)).

> In order to state a hostile work environment claim, a plaintiff must plead facts showing that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) defendant knew or should have known about the harassment and failed to take remedial action.

*Hanna v. Cangshan Cutlery Co.*, 767 F. Supp. 3d 384, 389 (W.D. Tex. 2025) (citing *Hackett v. United Parcel Serv.*, 736 F. App'x 444, 450 (5th Cir. 2018)).

Aside from the conclusory statement that they "were subjected to … harassment by store leadership," Doc. #1 at PageID 6, there are no facts alleged in the complaint that would show the plaintiffs were subjected to harassment and that such harassment affected their terms, conditions, or privileges of employment. So, the plaintiffs' harassment/hostile work environment claims will also be dismissed for failure to state a claim.

### b. Exhaustion

Before filing a private cause of action under Title VII, "a plaintiff must exhaust administrative remedies by filing a charge with the EEOC within 180 days of the discriminatory action." *Ernst*, 1 F.4th at 337. Since "[t]he scope of an EEOC complaint should be construed liberally," the Fifth Circuit interprets what charges are "properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 788, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "[T]he crucial element of a charge of discrimination is the factual statement contained therein," *Clayton v. Rumsfeld*, 106 F. App'x 268, 271 (5th Cir. 2004), and "the proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation and to put an employer on notice of the existence and nature of the charges against him," *Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 272 (5th Cir. 2013) (per curiam) (internal citation omitted).

Kelley's EEOC charge states that she "was subjected to differential treatment and unfair labor practices, as [she] was required to complete projects in a 2-hour time frame." Doc. #1-1. Jackson's EEOC charge states that she "ha[s] been subjected to unequal treatment" and she is "aware of White coworkers who are allowed to take their breaks together, whereas [she] and other

Black coworkers are not allowed to take [their] breaks together." Doc. #1-3 at 1. Because neither charge contains any indication of race-based harassment, the plaintiffs' harassment/hostile work environment claims will be dismissed for failure to exhaust as well.

### c. Abandonment

"[A] party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023). Because Kelley and Jackson did not address their harassment claim in their response to the motion to dismiss, *see generally* Doc. #14, the claim is further properly dismissed as abandoned by them.

### 3. Retaliation

Target argues that "Jackson did not assert any retaliation claim in her EEOC charge;" and "both Plaintiffs fail to plead facts with any particularity that they engaged in any alleged protected activity, nor do they assert any causal connection between any protected activity and any adverse employment action," because they do not allege that "the decisionmaker regarding their hours had knowledge of any protected activity," they "do not plead when they suffered any reduction in hours," and "Kelley asserts she was terminated in July 2025, nine months after the alleged 'complaint.'" Doc. #11 at 9, 10 (emphases omitted).

The plaintiffs respond that they made internal complaints in October 2024, November 2024, and March 2025, and "submitted a formal written complaint to [Target's] corporate headquarters alleging racial discrimination, retaliation, and hostile work environment" on May 3, 2025; "Kelley was terminated approximately two months after [Target's] corporate acknowledgment of the discrimination complaint" and was "informed of her termination on the same day she was first told that an investigation had occurred;" and "Jackson … experienced

13

materially adverse actions including reduced hours and continued heightened scrutiny." Doc. #14 at PageID 57–59. They also maintain that their "EEOC narratives describe discriminatory treatment, retaliation, and adverse employment actions." *Id*. at PageID 59.

Target replies that "Plaintiffs generally state that they made 'internal complaints' but provide no facts regarding those complaints to establish they are activity protected by Title VII;" their allegation that a representative of Target responded to their complaint "fails to allege any decisionmaker involved in any alleged adverse employment decision had any knowledge of Plaintiffs participating in any protected activity under Title VII;" and "there is no inference of retaliation" as to the allegations that "Plaintiffs were subjected to 'increased scrutiny' and 'threats of discipline.'" Doc. #15 at 6.

"To establish Title VII retaliation, [a plaintiff] must show that 1) she engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pac. R.R. Co*., 990 F.3d 428, 433 (5th Cir. 2021). "At the pleading stage[ a plaintiff is] required to allege facts permitting at least an inference of her employer's knowledge of her protected conduct in order to establish the required causal link." *Id*. at 434. Close timing between protected activity and adverse actions may permit an inference that the employer knew about the protected activity. *Id*.

In their complaint, Kelley and Jackson allege that after they made complaints "[b]eginning in October 2024," management cut their hours; and when they continued to report discriminatory treatment, Kelley was terminated in July 2025. Doc. #1 at PageID 6. In her EEOC charge attached to the complaint, Kelley alleged that she "submitted a complaint to corporate about discriminatory practices" on October 17, 2024; her "hours were cut in retaliation" in late October 2024; and she "was terminated in a final act of retaliation" on July 15, 2025. Doc. #1-1. The plaintiffs allege

14

protected activity (reporting discriminatory treatment) and adverse employment actions (Kelley's termination and reduction in both their hours). They also allege facts sufficient to support a causal link because the adverse employment actions appear to have begun shortly after the discrimination was first reported. *See January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) ("We've repeatedly held periods of a few months sufficient to satisfy causation in a *prima facie* case."); *Outley*, 840 F.3d at 219 ("[T]he close timing between [the employee's] protected activity and the denial of a raise—about two months—is sufficient to show causal connection for purposes of a *prima facie* case."). So, Kelley's retaliation claim will not be dismissed for failure to state a claim. However, because retaliation is not indicated anywhere in Jackson's EEOC charge, Doc. #1-3, her retaliation claim will be dismissed for failure to exhaust administrative remedies.

### 4. Wrongful termination

Target argues that "as to [the plaintiffs'] 'wrongful termination' claim, Title VII recognizes no such cause of action;" "[t]o the extent Plaintiffs are claiming disparate treatment resulting in termination, they assert *no facts* in support of any such claim, nor did they allege any such claim in their EEOC Charges;" and "Jackson does not even assert her employment was terminated." Doc. #11 at 11. The plaintiffs do not address their wrongful termination claim in their response. *See generally* Doc. #14. In its reply, Target argues that Kelley's "failure to respond constitutes abandonment of [her wrongful termination] claim and it should be dismissed with prejudice," and "[f]urther, because there is no claim for 'wrongful termination' recognized by Title VII or Mississippi law, the claim must be dismissed." Doc. #15 at 4.

"Wrongful termination in and of itself does not violate Title VII." *Baker v. Exxon Chem. Americas*, 68 F.3d 467, *3 (5th Cir. 1995) (per curiam). "Title VII, by its own terms, does not require that an employer terminate its employees only for good cause; [the court's] inquiry is not

15

into the merits of the employer's employment decisions but into the motives." *Wilson v. Belmont Homes, Inc.*, 970 F.2d 53, 57 (5th Cir. 1992).

Because there is no standalone wrongful termination claim under Title VII, and because Kelley alleges she was terminated in retaliation for reporting discrimination, the Court construes the allegation of wrongful termination as part of Kelley's retaliation claim. To the extent Kelley asserts wrongful termination as a separate cause of action, that claim will be dismissed for failure to state a claim. And because Jackson does not allege she was ever terminated, to the extent she asserts a wrongful termination claim, such claim will also be dismissed for failure to state a claim.

### C. Shotgun Pleading

Target argues that "Plaintiffs' Complaint is a quintessential shotgun pleading" because it "does not make clear which Plaintiff is asserting what claims, nor does it establish which alleged facts support which claims made by which plaintiff." Doc. #11 at 3–4. The plaintiffs did not address Target's shotgun pleading argument in their response. *See generally* Doc. #14.

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff plead sufficient facts "to provide notice to [a defendant] of the factual basis" for the plaintiff's claims. *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). Shotgun pleadings violate the notice pleading standard "by failing to one degree or another to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."[4] *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quoting *Weiland*,

---

[4] "A 'shotgun pleading' is a pleading with 'multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claims is brought against.'" *Jones v. Grapeland Indep. Sch. Dist.*, No. 24-40194, 2024 WL 4490604, at *1 n.1 (5th Cir. Oct. 15, 2024) (per curiam) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). The Eleventh Circuit has identified several other categories of shotgun pleadings, including "a complaint containing multiple counts where each count adopts the allegations of all preceding counts," a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1321–23.

16

792 F.3d at 1320); *see Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (citing *Vibe Micro*); *Hart v. Salois*, 605 F. App'x 694, 701 (10th Cir. 2015) (per curiam).

"[I]t is well-established that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Prescott v. UTMB Galveston Tex.*, 73 F.4th 315, 318 (5th Cir. 2023) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). While the complaint here could have been more clearly organized, it contains sufficient information for Target and the Court to understand which allegations pertain to which plaintiff, and which allegations support each cause of action. Accordingly, the plaintiffs' complaint will not be dismissed as a shotgun pleading.

**V**
**Conclusion**

Target's motion to dismiss [10] is **GRANTED**. All claims against Target are **DISMISSED without prejudice**.[5]

**SO ORDERED**, this 27th day of July, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[5] Target's motion does not specify that it seeks dismissal with prejudice. *See generally* Doc. #10. While Target's memorandum brief requests dismissal with prejudice, Doc. #11 at 2, the Court declines to consider such request because it is not specified in the motion. Regardless, the proper remedy for improper service of process is generally dismissal without prejudice. *See Denham v. Watkins*, No. 24-60201, 2024 WL 4403871, at *2 (5th Cir. Oct. 4, 2024) ("A dismissal under 12(b)(5) is typically granted without prejudice because 'dismissal with prejudice is an extreme sanction that deprives a litigant of the opportunity to pursue his claim,' and a … 'dismissal with prejudice is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice.'") (quoting *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 326 (5th Cir. 2008)). As to the claims dismissed for failure to state a claim, "courts should not dismiss pro se complaints pursuant to Rule 12(b)(6) without first providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case," *Ricks v. Khan*, 135 F.4th 296, 300–01 (5th Cir. 2025) (quoting *Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011)), and it is not obvious to the Court that the plaintiffs here have pled their best case. If the plaintiffs want to seek leave to amend their complaint, they should request such leave no later than August 10. If leave to amend is not sought by August 10, 2026, a judgment will be entered in accordance with the conclusions in this order.